J. S66031/18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: Z.Q.D., | : | IN THE SUPERIOR COURT OF |
| A MINOR | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: R.D., MOTHER | : | No. 1306 EDA 2018 |

Appeal from the Decree Entered April 4, 2018,
in the Court of Common Pleas of Philadelphia County
Family Court Division at Nos. CP-51-AP-0001187-2017,
CP-51-DP-0001365-2014, FID#: 51-FN-001324-2014

| | | |
|---|---|---|
| IN THE INTEREST OF: Z.R.D., | : | IN THE SUPERIOR COURT OF |
| A MINOR | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: R.D., MOTHER | : | No. 1308 EDA 2018 |

Appeal from the Decree Entered April 4, 2018,
in the Court of Common Pleas of Philadelphia County
Family Court Division at Nos. CP-51-AP-0000912-2017,
CP-51-DP-0001364-2014, FID#: 51-FN-001324-2014

BEFORE: GANTMAN, P.J., PANELLA, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED NOVEMBER 08, 2018**

R.D. ("Mother") appeals from the April 4, 2018 decrees entered in the Court of Common Pleas of Philadelphia County, Family Court Division, involuntarily terminating her parental rights to her dependent children, Z.Q.D., male child, born in June of 2003, and Z.R.D., male child, born in May of 2009 (collectively, "Children"), pursuant to the Adoption Act, 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), (8), and (b). After careful review, we affirm.

The trial court set forth the following:

> The family became known to the Department of Human Services ("DHS") on March 18, 2014, when DHS received a substantiated General Protective Services ("GPS") report, which alleged that Mother physically abused the Children and that Mother had a history of drug use, and untreated bipolar disorder. On June 4, 2014, DHS learned that the Mother and Children were homeless. DHS also learned that Mother continued to physically abuse the Children and take illegal drugs. DHS obtained an Order of Protective Custody ("OPC") on the same day. Following a hearing on June 20, 2014, the Children were adjudicated dependent by the Honorable Jonathan Q. Irvine.
>
> After the adjudication of dependency, Mother tested positive for marijuana on twenty separate (20) occasions between August 1, 2014 [and] May 19, 2017. On September 27, 2016, the Community Umbrella Agency ("CUA") held a Single Case Plan ("SCP") Meeting. The parental objectives for Mother were (1) to maintain sobriety; (2) to comply with all treatment recommendations from mental health evaluations; (3) to comply with all court ordered drug random drug [sic] screens; (4) to enroll and to complete a drug treatment program; (5) to maintain a personal relationship with her Children; (6) to visit the Children weekly and (7) maintain stable employment.
>
> The underlying Petition to Terminate Mother's Parental Rights was filed on September 27, 2017 due to Mother failing to meet her SCP objectives. She failed to complete a substance abuse treatment program or fully participate in mental health treatment. Mother also continued to test positive for controlled substances. On April 4, 2018, this court ruled to terminate Mother's parental rights to the Children pursuant to 23 Pa.C.S.A. § 2511(a)(1)[,] (2)[,] (5)[,] (8) and found that termination of Mother's parental rights was in the best interest of the Children pursuant to 23 Pa.C.S.A. § 2511(b).

Mother filed the instant Notice of Appeal on April 25, 2018.

Trial court opinion, 7/25/18 at 2-4 (record citations omitted).

Mother raises the following issues for our review:

1. Whether the trial court erred by terminating the parental rights of [M]other pursuant to 23 Pa.C.S.A. [§] 2511(a)(1) without clear and convincing evidence of [M]other's intent to relinquish her parental claim or refusal to perform her parental duties[?]

2. Whether the trial court erred by terminating the parental rights of [M]other pursuant to 23 Pa.C.S.A. [§] 2511(a)(2) without clear and convincing evidence of [M]other's present incapacity to perform parental duties[?]

3. Whether the trial court erred by terminating the parental rights of [M]other pursuant to 23 Pa.C.S.A. [§] 2511(a)(5) without clear and convincing evidence to prove that reasonable efforts were made by Department of Human Services to provide [M]other with additional services and that the conditions that led to placement of the [C]hildren continue to exist[?]

4. Whether the trial court erred by terminating the parental rights of [M]other pursuant to 23 Pa.C.S.A. [§] 2511(8) without clear and convincing evidence that the conditions that led to placement of the [C]hildren continue to exist when [M]other presented evidence of compliance with the goals and objectives of her family service plan[?]

5. Whether the trial court erred by terminating the parental rights of [M]other pursuant to 23 Pa.C.S.A. [§] 2511(b) without clear and convincing evidence that there is no parental bond between [M]other and [C]hildren and

>           that termination would serve the best interest
>           of the [C]hildren[?]

Mother's brief at 7.

In matters involving involuntary termination of parental rights, our standard of review is as follows:

> The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id.* "[A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id.* The trial court's decision, however, should not be reversed merely because the record would support a different result. *Id.* at 827. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. *See In re R.J.T.*, 9 A.3d [1179, 1190 (Pa. 2010)].

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted). "[I]f competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa.Super. 2003) (citation omitted).

The termination of parental rights is guided by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted). We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*), quoting *Matter of Adoption of Charles E.D.M. II*, 708 A.2d 88, 91 (Pa. 1998).

In this case, the trial court terminated Mother's parental rights pursuant to Sections 2511(a)(1), (2), (5), and (8), as well as (b). We have long held that, in order to affirm a termination of parental rights, we need

only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b). *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). Here, we analyze the trial court's termination decrees pursuant to Subsections 2511(a)(2) and (b), which provide as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . . .
>
> > (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

We first address whether the trial court abused its discretion by terminating Mother's parental rights pursuant to Section 2511(a)(2).

> In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa.Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa.Super. 2015), quoting *In re A.L.D.*, 797 A.2d 326, 337 (Pa.Super. 2002). "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. . . . [A] parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous." *In re A.L.D.*, 797 A.2d at 340 (internal quotation marks and citations omitted).

Here, in terminating Mother's parental rights to the Children, the trial court credited the testimony of Shavan Johnson, the CUA case manager. Ms. Johnson testified that the Children were removed from Mother's care

because of Mother's substance abuse and mental health issues. (Trial court opinion, 7/25/18 at 6; notes of testimony, 4/4/18 at 23-24.) Ms. Johnson further testified that Mother failed to complete drug and alcohol treatment, which was a parental objective for reunification; Mother consistently produced positive drug screens; Mother was inconsistent with her mental health treatment; and Mother admitted that she did not take her medication for bipolar disorder. (Trial court opinion, 7/25/18 at 6; notes of testimony, 4/4/18 at 25, 27-28.) Additionally, Mother testified that she smokes marijuana without a prescription in order to self-medicate because that is "the only way [I] can deal with stuff." (Trial court opinion, 7/25/18 at 6; notes of testimony, 4/4/18 at 56.)

We have reviewed the record and conclude that it supports the trial court's factual findings and that the trial court did not abuse its discretion in terminating Mother's parental rights under Section 2511(a)(2). The record demonstrates that the conditions that existed upon removal establish repeated and continued incapacity, abuse, neglect, or refusal of Mother that caused the Children to be without essential parental care, control, or subsistence necessary for their physical or mental well-being. The record also supports the trial court's conclusion that Mother continued to lack capacity to parent the Children.

We now turn to whether termination was proper under Section 2511(b). As to that section, our supreme court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.[A.] § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa.Super. 2012). In *In re E.M.*, 620 A.2d [481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791. However, as discussed below, evaluation of a child's bonds is not always an easy task.

*In re T.S.M.*, 71 A.3d at 267. "In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-763 (Pa.Super. 2008) (citation omitted).

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation." *In re Z.P.*, 994 A.2d at 1121 (internal citations omitted).

Moreover,

> While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
> > [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. . . .

*In re Adoption of C.D.R.*, 111 A.3d at 1219, quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa.Super. 2011) (quotation marks and citations omitted).

Our supreme court has stated that, "[c]ommon sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *T.S.M.*, 73 A.3d at 268. The court directed that, in weighing the bond considerations pursuant to Section 2511(b), "courts must keep the ticking clock of childhood ever in mind." *Id.* at 269. The *T.S.M.* court observed, "[c]hildren are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children." *Id.*

In determining that termination of Mother's parental rights favored the Children's needs and welfare, the trial court again credited Ms. Johnson's testimony. With respect to Z.Q.D., Ms. Johnson testified that he has a strong bond to his foster parents who satisfy his individual, educational,

therapeutic, and general medical needs. (Trial court opinion, 7/25/18 at 7; citing notes of testimony 4/4/18 at 11-14.) Ms. Johnson also testified that she has spoken with Z.Q.D. and he has stated his preference to be adopted. (Trial court opinion, 7/25/18 at 7; notes of testimony, 4/4/18 at 11.) Ms. Johnson further testified that termination of Mother's parental rights to Z.Q.D. would be in his best interests and would not cause him irreparable harm. (Trial court opinion, 7/25/18; notes of testimony 4/4/18 at 12, 29-32.) Our review of the record supports this determination, and the trial court did not abuse its discretion in terminating Mother's parental rights to Z.Q.D.

With respect to Z.R.D., Ms. Johnson testified that he is currently placed in pre-adoptive kinship care with his maternal aunt. (Notes of testimony, 4/4/18 at 30-31.) Ms. Johnson testified that Z.R.D. is bonded to his caregiver who satisfies his individual, educational, therapeutic, and general medical needs. (Trial court opinion, 7/25/18 at 7; notes of testimony 4/4/18 at 29-32.) She also testified that Z.R.D. has expressed his preference to be adopted. (Trial court opinion, 7/24/18 at 7; notes of testimony, 4/4/18 at 34.) Ms. Johnson further testified that termination of Mother's parental rights to Z.R.D. would be in his best interests and would not cause him irreparable harm. (Trial court opinion, 7/25/18 at 7; notes of testimony 4/4/18 at 12 29-32.) Our review of the record supports this

determination, and the trial court did not abuse its discretion in terminating Mother's parental rights to Z.R.D.

Accordingly, based upon our review of the record, we find no abuse of discretion and conclude that the trial court appropriately terminated Mother's parental rights to the Children under Sections 2511(a)(1), (2), (5), (8), and (b).

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/8/18